UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID L. ZAVASNIK<br><br>Plaintiff,<br><br>v.<br><br>FIRST MIDWEST BANK as successor in interest to BRIDGEVIEW BANK GROUP, and EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendants. | CIVIL ACTION<br><br>COMPLAINT 1:19-cv-06414<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

**NOW COMES** DAVID L. ZAVASNIK ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, FIRST MIDWEST BANK as successor in interest to BRIDGEVIEW BANK GROUP ("Midwest") and EQUIFAX INFORMATION SERVICES, LLC, ("Equifax" and collectively "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendant's violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and all of the events or omissions giving rise to the claims occurred in this District.

1

## PARTIES

4. Plaintiff David Zavasnik is a consumer and a natural person over 18-years-of-age.

5. Midwest is a corporation doing business in the State of Illinois.

6. Midwest is a furnisher of information as contemplated by 15 U.S.C. §1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

7. Equifax is a corporation incorporated in the state of Georgia, is authorized to do business in the State of Illinois, and is registered with the Illinois Secretary of State. It has a registered agent located in Illinois.

8. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined by 15 U.S.C. §1681a(p).

9. Equifax is regularly engaged in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity.

## FACTUAL ALLEGATIONS

10. Around October 1, 2005, Plaintiff obtained a loan from Bridgeview Bank Group in the amount of approximately $12,075 ("subject loan").

11. Around June 1, 2007, Plaintiff made his final payment, fully paying off the subject loan.

12. On April 20, 2013, Plaintiff filed a Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court, Northern District of Illinois, case number 13-16569.

13. On May 15, 2016, Plaintiff's bankruptcy case was discharged.

14. Around late 2018, Midwest acquired Bridgeview Bank Group.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTE TO EQUIFAX

15. After receiving his bankruptcy discharge, Plaintiff pulled his Equifax credit report to make sure all creditors were reporting accurately. Plaintiff discovered that Equifax and Bridgeview Bank Group were reporting the subject loan with a high scheduled monthly payment amount.[1]

16. Around May 2019, Plaintiff again pulled his Equifax credit report to make sure all creditors were reporting accurately. Plaintiff discovered that Midwest and Equifax were still reporting the subject loan with a high scheduled monthly payment amount.

17. The reporting of the subject loan was patently inaccurate, incomplete, and materially misleading because the subject loan was paid in full and closed and should not have been reporting a "Monthly Payment" of greater than $0.

    a. **Plaintiff's Dispute Letter to Equifax**

18. On May 16, 2019, Plaintiff sent a detailed dispute letter to Equifax requesting that his credit report be updated to reflect a zero monthly payment. Plaintiff specifically disputed the Bridgeview Bank Group trade line.

19. Among other items, Plaintiff's dispute letter stated the following: "Bridgeview Bank Group-This account was paid and closed, the monthly payment of $291 should be removed and replaced with a zero."

20. Upon information and belief, Midwest received notice of Plaintiff's dispute letter and all enclosed supporting documents from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S. Code §1681i(a)(2).[2]

---

[1] To help furnishers comply with their requirements under the FCRA, the Consumer Data Industry Association ("CDIA"), in cooperation with the Credit Reporting Agencies, publishes a Credit Reporting Resource Guide for reporting data called the "Metro 2 Format."
[2] Plaintiff attached his driver's license and social security card to his dispute letter.

### b. Defendants' Failure To Correct Inaccurate Reporting

21. On August 21, 2019, Plaintiff obtained his Equifax credit report to determine whether Equifax and Midwest had updated their inaccurate and incomplete credit reporting of the subject loan.

22. Despite receiving Plaintiff's dispute letter, Equifax and Midwest continued to report the subject loan with a "Monthly Payment" of $291.

23. The reporting of the Bridgeview Bank Group trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is still owing, and is still obligated to pay a monthly payment on the subject loan. However, Plaintiff is no longer personally liable on the subject loan, as the account was fully paid and closed on June 1, 2007.

### IMPACT OF CONTINUING INACCURATE REPORTING ON PLAINTIFF'S CREDIT FILES

24. The erroneous reporting of the subject loan paints a false and damaging image of Plaintiff. After it was provided notice by Plaintiff and Midwest, Equifax did not update the Bridgeview Bank Group trade line to accurately reflect the subject loan.

25. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to his ability to regain a firm foothold on his creditworthiness, credit standing, and credit capacity.

26. The inaccurate reporting of subject loan had significant adverse effects on Plaintiff's credit rating because it created a false impression that Plaintiff was still personally liable and obligated to pay on the subject loan, rendering Plaintiff a high-risk consumer and damaging his creditworthiness.

27. In September 2019, in an effort to remedy the continued inaccurate and incomplete reporting of the subject loan and to validate the accuracy of Defendants' credit reporting, Plaintiff purchased an Equifax credit report, incurring out of pocket expenses.

28. The Equifax report revealed that Midwest and Equifax were still inaccurately reporting the subject loan showing Plaintiff is still personally responsible for a scheduled monthly payment.

29. Plaintiff suffered monetary damages he otherwise would not have incurred had Defendants ceased or corrected the inaccurate and incomplete reporting of the subject loan after Plaintiff's dispute.

30. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with his attorneys, tracking the status of his dispute, monitoring his credit file, and mental and emotional pain and suffering.

31. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to force compliance with the Fair Credit Reporting Act.

### COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST MIDWEST)

32. Plaintiff restates and reallages paragraphs 1 through 31 as though fully set forth herein.

33. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

34. Midwest is a "person" as defined by 15 U.S.C. §1681a(b).

35. Midwest is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

36. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

37. Midwest violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from Equifax, and Plaintiff.

38. Midwest violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Plaintiff and Equifax pursuant to 15 U.S.C. §1681i(a)(2).

39. Had Midwest reviewed the information provided by Plaintiff, and Equifax, it would have corrected the inaccurate designation of the subject loan, transmitting the correct information to Equifax. Instead, Midwest wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

40. Midwest violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of the investigation of Plaintiff's dispute with Equifax.

41. Midwest violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation to Equifax after being put on notice and discovering inaccurate and misleading reporting with respect to the subject loan and Plaintiff.

42. Midwest violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's credit files.

43. Midwest failed to conduct a reasonable investigation of its reporting of the subject loan, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax under 15 U.S.C. §1681i(a)(1).

44. Despite the blatantly obvious error on Plaintiff's credit file, and Plaintiff's efforts to correct the error, Midwest did not correct the errors or trade line to report accurately and completely.

Instead, Midwest wrongfully furnished and reported the inaccurate, incomplete, and misleading information after Plaintiff's dispute to one or more third parties.

45. A reasonable investigation by Midwest would have confirmed the veracity of Plaintiff's dispute, yet the inaccurate information continues to be reported on Plaintiff's credit file.

46. Had Midwest taken steps to investigate Plaintiff's valid dispute or Equifax's request for investigation, it would have permanently corrected the erroneous and misleading credit reporting. Plaintiff provided all relevant information in his request for investigation.

47. By deviating from the standards established by the loan servicing industry and the FCRA, Midwest acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE,** Plaintiff DAVID L. ZAVASNIK respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(AGAINST EQUIFAX)

48. Plaintiff restates and realleges paragraphs 1 through 47 as though fully set forth herein.

49. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

50. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

51. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

52. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

53. Plaintiff provided Equifax with all relevant information and documentation in his request for investigation to show that he was not liable to make a monthly payment on the subject loan.

54. Equifax prepared Plaintiff's credit reports containing inaccurate and materially misleading information by reporting the subject loan with a monthly payment amount, when in fact Plaintiff had paid the account in full, and owed no monthly payment amount on the subject loan.

55. A simple review of the subject loan would have confirmed that the subject loan was paid in full and closed, and did not have a monthly payment amount owed or scheduled.

56. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff.

57. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information on Plaintiff's credit files.

58. Had Equifax taken any steps to investigate Plaintiff's valid dispute, it would have determined that subject loan was paid in full and closed on June 1, 2007.

59. Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to Midwest. Upon information and belief, Equifax also failed to include all relevant information as part of the notice to Midwest regarding Plaintiff's dispute that Equifax received from the Plaintiff.

60. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and Midwest with regard to the subject loan.

61. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's dispute.

62. After Plaintiff's written detailed dispute, Equifax had specific information related to the subject loan.

63. Equifax knew that the inaccurate designation of the subject loan on Plaintiff's credit file under the Bridgeview Bank Group trade line having a scheduled monthly payment after being paid in full and closed would have a significant adverse effect on Plaintiff's credit worthiness.

64. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

65. Despite actual knowledge that Plaintiff's credit file was erroneous, Equifax readily sold Plaintiff's inaccurate and misleading report to one or more third parties, thereby misrepresenting Plaintiff and, ultimately, Plaintiff's creditworthiness.

66. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

67. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

68. Equifax's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting his credit information.

69. Equifax acted reprehensively and carelessly by reporting Plaintiff owing a scheduled payment amount on the subject loan after Plaintiff paid the subject loan in full.

70. Upon information and belief, Equifax has exhibited a pattern of refusing to correct consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

71. As stated above, Plaintiff was severely harmed by Equifax's conduct.

**WHEREFORE**, Plaintiff DAVID L. ZAVASNIK respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Order the deletion of all adverse credit reporting;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;
d. Award each Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: September 26, 2019                                  Respectfully Submitted,

                                                                /s/ Alexander J. Taylor
                                                                /s/ Marwan R. Daher
                                                                /s/ Omar T. Sulaiman
                                                                Alexander J. Taylor, Esq.
                                                                Marwan R. Daher, Esq.
                                                                Omar T. Sulaiman, Esq.
                                                                *Counsel for Plaintiff*
                                                                Sulaiman Law Group, Ltd
                                                                2500 S Highland Ave, Suite 200
                                                                Lombard, IL 60148
                                                                Telephone: (630) 575-8181
                                                                ataylor@sulaimanlaw.com
                                                                mdaher@sulaimanlaw.com
                                                                osulaiman@sulaimanlaw.com